## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| MICHAEL JORDAN | : | Docket No.  23-cv-4486 |
| Plaintiff, | : | |
| vs. | : | JURY TRIAL DEMANDED |
| | : | |
| LAFAYETTE COLLEGE | : | |
| Defendant. | : | |

## **COMPLAINT**

### **PRELIMINARY STATEMENT**

1.     Plaintiff Michael Jordan ("Plaintiff" or "Coach Jordan"), by and through his counsel, hereby brings the instant Complaint against Defendant Lafayette College (the "College") for its decision to suspend and then terminate Coach Jordan from his position as Head Coach of the Men's Basketball team in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq. ("Title VII), the Pennsylvania Human Relations Act, 43 P.S. § 955 ("PHRA"), the Constitution of the Commonwealth of Pennsylvania and Pennsylvania Law.  In support of the Complaint, Coach Jordan states as follows:

### **JURISDICTION AND VENUE**

2.     This Court has jurisdiction over these proceedings under 28 U.S.C. §1331, which provides for original jurisdiction in the United States District Courts for civil actions arising under the Constitution or laws of the United States. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq.

3.     Pursuant to 28 US.C. § 1367, this Court has supplemental jurisdiction over all other claims herein as they are so related to the claims in the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events giving rise to the claims herein, or a substantial part thereof, occurred in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. §1391(c) because both parties may be found in this district.

## PARTIES

5.     Coach Jordan is a resident of Pennsylvania, residing at 2760 Clark Place, Easton, Pennsylvania 18040.

6.     Lafayette College, founded in 1826, is a private liberal arts college in Easton, Pennsylvania.

7.     Lafayette College, at all times material hereto, acted by and through its agents, apparent agents, ostensible agents, servants, employees, workmen and/or representatives who were acting in the course and scope of their respective agency or employment and/or in the promotion of the College's business, mission and/or affairs.

8.     Lafayette College, at all times material hereto, qualifies as Coach Jordan's employer pursuant to Title VII and the PHRA.

## ADMINISTRATIVE PROCEDURES

9.     Coach Jordan filed charges of racial discrimination and retaliation against Defendant under state and federal law with the District Office of the Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2023-07492, on August 11, 2023.

10.     Pursuant to Section 7 (c) of the Pennsylvania Human Relations Act, the Pennsylvania Human Relations Commission (PHRC) has designated the EEOC in the Work Sharing Agreement as its agent for receipt of complaints initially filed with EEOC that are dual filed with PHRC.

11.     Coach Jordan's EEOC charge was filed with the PHRC, PHRC Case No. 202300972.

12.     Coach Jordan received a Notice of Right to Sue Within 90 Days from the EEOC dated August 29, 2023. A copy of the "Notice of Right to Sue" is attached hereto and marked as Exhibit A.

13.     The PHRC has advised that it will take no further action. A copy of the Notification of Dual Filing is attached hereto and marked as Exhibit B.

## OPERATIVE FACTS

14.     Coach Jordan incorporates by reference the preceding paragraphs as though set forth fully herein.

### Coach Jordan's Experience as Player and as Coach

15.     Coach Jordan was a standout basketball star at Abington Friends School and went on to play at the University of Pennsylvania.

16.     While playing for the University of Pennsylvania, the Quakers team won two Ivy League regular-season titles and appeared in the NCAA tournament in 1999 and 2000.

17.     Personally, Coach Jordan excelled as well, being named the 1996 Rookie of the Year, a three-time all-Ivy League selection, and the 1999-2000 Ivy League Player of the Year as a Senior.

18.     Coach Jordan was inducted into the Big 5 Hall of Fame in 2014 and into the Penn Athletics Hall of Fame Class XIII in May 2022.

19.     After graduating from the University of Pennsylvania in 2000 with a bachelor's degree in Sociology, Coach Jordan spent 11 years as a professional basketball player, which included playing throughout Europe, as well as with the Philadelphia 76ers' summer league team and the Boston Celtics' preseason team.

20.     During his time in Europe, Coach Jordan was a two-time champion and all-star in the German Bundesliga and an all-star in the Italian A1 league.

21.     Coach Jordan began his coaching career in 2012 as an Assistant Coach at Colgate University.

22.     With Coach Jordan's help, the Colgate Raiders enjoyed three straight seasons of record setting win totals from 2017-2020.

23.     The Raiders' stretch of wins included consecutive 20-win seasons, which was a first in the school's history, and a NCAA Tournament appearance in 2018-19.

24.     Coach Jordan joined the Drexel University Men's Basketball program as an Assistant Coach for the 2020-21 season and helped lead the Drexel Dragons to their first Costal Athletic Association ("CAA") title and the program's first NCAA Tournament appearance in 25 years.

25.     In 2021, Coach Jordan returned to Colgate as the Assistant Coach and once again helped the team earn regular season and a Patriot League title wins and another NCAA Tournament appearance.

**Lafayette Hires Coach Jordan as Head Coach and he has Immediate Success**

26.     The Lafayette Leopards men's basketball team represents Lafayette College in NCAA Division I competition. The school's team competes in the Patriot League and plays home games in Kirby Sports Center.

27.     Coach Jordan was hired to be Layfette College's 19th Men's Basketball head coach on March 29, 2022 under a 5-year contact following the retirement of Fran O'Hanlon, who coached the Leopards for 27 seasons. *See* Exhibit C.

28.     Coach Jordan inherited a struggling basketball program with a team that finished in 8th place in the Patriot League.

29.     Coach Jordan brought a culture of accountability, trust, openness, honesty and hard work to Lafayette.

30.     Coach Jordan treated all of the players fairly, offering them all the opportunity to be a starter regardless of their playing time under Coach O'Hanlon.

31.     To that end, beginning in May 2022, Coach Jordan scheduled individual meetings with the players to gage their abilities and set expectations and held both team and individual work outs in order to assess their strengths and weaknesses.

32.     Coach Jordan's even-handed approach resulted in some players who did not play under Coach O'Hanlon receiving significant playing time during the 2022-23 season.

33.     Throughout 2022-23 basketball  season, Coach Jordan's relationships with competitor teams allowed his players to experience unique challenges that made the team better.  These experiences included matchups with the University of Pennsylvania, Coach Jordan's alma mater La Salle, who was being led by Coach Jordan's former college head coach; Colgate, Coach Jordan's former team which was coached by his friend and college teammate Matt Langel; and Drexel, Coach Jordan's former team.

34.     The Lafayette Leopards succeeded, improving their overall record and finishing 6th in the Patriot League.

35.     After being eliminated in the first round of the Patriot League tournament the previous year, the 2022-23 Leopards used what Coach Jordan instilled in them and made it to the Conference finals.

36.     Unfortunately, the team was beaten in the finals by Coach Jordan's former team, the Colgate Raiders, falling one game short of reaching the NCAA Tournament.

**Suspension And Termination**

37.    On February 15, 2023, with only a few games left in the season and the Patriot League tournament only 2 weeks away, Coach Jordan was suspended by Lafayette College.

38.     The College claimed that the suspension was done because a former member of the Men's Basketball team had written a letter to the school complaining about Coach Jordan.

39.    In reality, the College saw an opportunity to get rid of Coach Jordan and used the letter as pretext to discriminate against Coach Jordan and to fire him without justification and without paying him the balance of his contract.

40.    In the letter, the student made his biases known by making it clear that he did not support the College's decision to hire Coach Jordan.

41.    The student complained that Coach Jordan's coaching was too rigorous, and that his language around players was too harsh.

42.    The student was also very critical of Athletics Director Sherryta Freeman, yet Ms. Freeman was never investigated nor disciplined.

43.    While Coach Jordan was suspended, the College interviewed Coach Jordan as a part of their alleged investigation into the allegations of the student.

44.    Coach Jordan cooperated fully with the investigation and all follow-up requests from the investigators.

45.    During the interview, Coach Jordan disputed each and every allegation made by the student, providing both context and witnesses for the investigators to consult.

46.    In fact, Coach Jordan provided the College with the names and contact information of more than 45 individuals to refute the claims made in the letter.

47.     These individuals consisted of fellow Lafayette coaches, faculty, staff and administrators, parents of current players and recruits, and coaches, and staff of other basketball programs.

48.     Most of these individuals had witnessed numerous Leopards' practices, scrimmages, and games and would refute the claims that Coach Jordan's coaching was too harsh or out of the ordinary.

49.     It is unknown if the College followed up with each of these witnesses.

50.     While the investigation was being conducted, Coach Jordan was forced to sit on the sideline and get updates on how his team progressed through the end of the season and through the Patriot League Tournament.

51.     During the suspension, Coach Jordan's assistant coach, Mike McGarvey, a Caucasian/ white male, took over the team.

52.     As a result of this suspension, Coach Jordan was not allowed to lead his team during the final four games of the Patriot League Conference Tournament, including the Championship game against Colgate University.

53.     As mentioned above, at stake was not only the Patriot League Conference title, but also Lafayette College's first NCAA appearance since 2015.

54.     This match-up against his former team would have raised Coach Jordan's profile as a coach and improved his team's chances of winning.

55.     Unfortunately, on March 8, 2023, the team lost to Colgate 79-61.

56.     On March 29, 2023 Coach Jordan was terminated by Lafayette College.

57.     Members of the basketball team offered support for Coach Jordan throughout his suspension and were devastated by his termination.  Several students even transferred to other schools despite having the eligibility to continue to play at Lafayette College.

7

58.     Defendant claimed to terminate Coach Jordan "for cause" but this claim is blatantly false.

59.     In fact, before terminating Coach Jordan "for cause," Defendant asked Coach Jordan to resign from his position, thus proving that it had no basis to terminate.

60.     In the letter terminating Coach Jordan, the College claimed that Coach Jordan was terminated for "gross misconduct and/or insubordination" based on the alleged findings of the investigation.

61.     To date, Coach Jordan has not been provided any written information about the investigation and its findings despite repeated requests.

62.     Lafayette College's reason for termination was a pretext to terminate Coach Jordan without having to pay him what he was owed under his contract and a pretext for racial discrimination.

63.     Coach Jordan's predecessor, a white male, was the subject of repeated and severe complaints to the College for many years and was never suspended or terminated.

64.     The allegations against the former coach spanned decades and ranged from the mistreatment of Black athletes because of their race to specifically targeting individual players for harsh treatment.

65.     The complaints against the former coach were made known to numerous College officials including the Athletic Director and the Vice President for Campus Life, and the Board of Trustees, yet no actions were taken against the former coach.

66.     Upon information and belief, a recent investigation into the College's Athletic department revealed troubling findings about its lack of diversity.  Despite these findings, not actions were taken against the former coach.

67.     The allegations against Coach Jordan were not severe or worthy of suspension or termination and paled in comparison to the allegations against his predecessor.

68.     Further, Coach Jordan was replaced by Assistant Coach Mike McGarvey, who is Caucasian.

69.     Coach Jordan brought McGarvey first from Lycoming College, NCAAA Division III school, to Colgate, a Division I school, and then finally to the College and thus taught, nurtured and mentored him as a coach.  By immediately promoting a disciple of Coach Jordan to Head Coach, who participated in the environment Coach Jordan created, the College dispelled any notion that there was something wrong with Coach Jordan's method of coaching.

70.     Indeed, such a promotion is an indicator that the College believes in the Coach Jordan's method of coaching, as the team's improved performance indicates.

## DAMAGES

71.     Lafayette's suspension and ultimate termination of Jordan has resulted in significant damages to Jordan's reputation, his ability to obtain employment, and his wellbeing.

72.     Specifically, Defendant's wrongful termination entitles Coach Jordan to the full payment of his contract had he remained as Head Coach throughout his 5-year contract: more than $980,000.00.

73.     Additionally, Coach Jordan is entitled to recover for the damages caused by his suspension whereby he was denied the national exposure that accompanied the Leopard's advancement through the Patriot League Conference tournament and its championship matchup against Coach Jordan's former team, Colgate University.

74.     Next, Coach Jordan is entitled to recover for damages to his reputation and the loss of future earnings caused by Defendant's wrongful suspension and termination and Defendant's blatantly false claim that Coach Jordan was fired for cause.

75.     Coach Jordan is also entitled to recover for the pain and suffering he endured as a result of Defendant's actions.  These injuries include mental anguish, anxiety, embarrassment, depression, sleeplessness and emotional distress.

76.     The damages Coach Jordan incurred and will incur as the result of Defendant's actions exceed $5 million dollars.

### COUNT I
### Wrongful Termination
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)

77.     Coach Jordan incorporates by reference the preceding paragraphs as though set forth fully herein.

78.     42 U.S.C. §2000e-2(a) provides that it shall be an unlawful discriminatory practice: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

79.     Coach Jordan, an African American male, is a member of a protected class who was more than qualified to be the Head Coach of Defendant's men's basketball team.

80.     Coach Jordan suffered adverse employment actions when he was suspended and then terminated by Defendant without cause.

81.     Coach Jordan's suspension and termination give rise to an inference of discrimination whereas:

     a.  The reasons given for the suspension and termination, i.e., the complaints by the former student player, pale in comparison to the numerous complaints made

        against Coach Jordan's predecessor who is a white male that was never disciplined by Defendant; and

    b.   Defendant promoted Coach Jordan's Assistant Coach, a white male, to Head Coach despite the fact that the Assistant has the same coaching mentality and philosophy as Coach Jordan.

82.    As a direct and proximate result of Defendant's discriminatory treatment, Coach Jordan suffered and continues to suffer emotional distress, mental anguish, embarrassment, anxiety and monetary damages including loss of future earnings.

83.    As a result of the conduct of Defendant, Plaintiff hereby demands punitive damages.

84.    Pursuant to Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a), et seq., Plaintiff demands attorneys fees and court costs.

    **WHEREFORE**, Coach Jordan demands judgment against Defendant for damages in an amount in excess of five million dollars ($5,000,000.00) for all damages and losses incurred, or to be incurred, by Coach Jordan as a result of Defendant's breach, plus attorney's fees and such reasonable costs as the Court may allow.

<u>**COUNT II**</u>
**Wrongful Termination**
**Violation of 43 Pa. C. S. § 955(a)**

85.    Coach Jordan incorporates by reference the preceding paragraphs as though set forth fully herein.

86.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with

respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

87.     Coach Jordan, an African American male, is a member of a protected class who was more than qualified to be the Head Coach of Defendant's men's basketball team.

88.     Coach Jordan suffered adverse employment actions when he was suspended and then terminated by Defendant without cause.

89.     Coach Jordan's suspension and termination give rise to an inference of discrimination whereas:

   a. The reasons given for the suspension and termination, i.e., the complaints by the former student player, pale in comparison to the numerous complaints made against Coach Jordan's predecessor who is a white male that was never disciplined by Defendant; and

   b. Defendant promoted Coach Jordan's Assistant Coach, a white male, to Head Coach despite the fact that the Assistant has the same coaching mentality and philosophy as Coach Jordan.

90.     Coach Jordan hereby makes a claim against Defendant under the Pennsylvania Human Relations Act.

91.     As a direct and proximate result of Defendant's discriminatory treatment, Coach Jordan suffered and continues to suffer emotional distress, mental anguish, embarrassment, anxiety and monetary damages including loss of future earnings.

92.     Pursuant to the PHRA, Plaintiff demands attorney's fees and court costs.

   **WHEREFORE**, Coach Jordan demands judgment against Defendant for damages in an amount in excess of five million dollars ($5,000,000.00) for all damages and losses incurred, or to be incurred, by Coach Jordan as a result of Defendant's breach, plus attorney's fees and such reasonable costs as the Court may allow.

## COUNT III

### Breach of Contract

93.    Coach Jordan incorporates by reference the preceding paragraphs as though set forth fully herein.

94.    Coach Jordan and Defendant entered into a valid 5-year contract for Coach Jordan to serve as Head Men's Basketball Coach at Lafayette College, effective April 4, 2022.

95.    Specifically, Defendant offered Coach Jordan the position and offered to pay him a salary. Coach Jordan accepted the offer and, in exchange, agreed to coach the team.

96.    Defendant breached the duties imposed by the contract by suspending Jordan without justification.

97.    Defendant breached the duties imposed by the Agreement by terminating Jordan without justification.

98.    Defendant's termination of Coach Jordan without justification was a material breach of the contract.

99.    As a direct and proximate result of Defendant's breach, Coach Jordan suffered and continues to suffer emotional distress, mental anguish, embarrassment, anxiety and monetary damages including loss of future earnings.

**WHEREFORE**, Coach Jordan demands judgment against Defendant for damages in an amount in excess of five million dollars ($5,000,000.00) for all damages and losses incurred, or to be incurred, by Coach Jordan as a result of Defendant's breach, plus attorney's fees and such reasonable costs as the Court may allow.

Respectfully submitted,

**MINCEY FITZPATRICK ROSS, LLC**

By:     /s/ Riley H. Ross III
        Riley H. Ross III, Esquire
        Zainab Khadija Shields, Esquire
        One Liberty Place
        1650 Market Street, Suite 3600
        Philadelphia, PA 19102
        Tel: 215-587-0006

Date:   November 14, 2023

        Attorneys for Michael Jordan